UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHERYL MARIE FIORETTI,

                              Plaintiff,       **No. 1:15-cv-00143(MAT)**
                                                    **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

---

## I. Introduction

Represented by counsel, Cheryl Marie Fioretti ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

Plaintiff protectively filed applications for DIB and SSI on July 27, 2011, alleging a disability onset date of September 2, 2009. After the claims were denied initially on December 7, 2011,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff requested a hearing, which was conducted by administrative law judge Eric L. Glazer ("the ALJ") on March 28, 2013. Plaintiff appeared with her attorney and testified. At the hearing, Plaintiff amended her alleged onset date to June 28, 2010, the date on which she had been in a motor vehicle accident and sustained injuries to the cervical and thoracolumbar areas. (T.209-13).[2] On May 13, 2013, the ALJ issued an unfavorable decision. (T.22-34). Plaintiff submitted new evidence to the Appeals Council, which denied her request for review on December 17, 2014, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

---

[2] Citations to "T." in parentheses refer to pages from the transcript of the certified administrative record.

## III. The ALJ's Decision

The ALJ followed the five-step sequential evaluation established by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since her alleged disability onset date; although she had worked,[3] it did not rise to SGA levels. (T.24).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: herniated cervical and lumbar discs; osteoarthritis; and obesity. (T.24).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (T.25).

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1527, 416.927. (T.25).

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a payroll representative. (T.30).

---

[3] Plaintiff had past work experience as a cashier, a home health aide, an office clerk, and a payroll representative. (T.163). Her earnings record revealed SGA earnings in 1999 to 2004, and in most other years since 1995, she reported positive but sub-SGA earnings. (T.158).

The ALJ made an alternative step-five finding that, considering Plaintiff's age (a younger individual), education (equivalency diploma), work experience, and RFC, there are jobs existing in significant numbers in the national economy that she can perform. (T.31). Accordingly, a finding of "not disabled" was entered.

**IV. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## V. Disucssion

### A. Plaintiff's Point I: The RFC is Legally Erroneous and Unsupported by Substantial Evidence.

#### 1. The ALJ Erroneously Gave Controlling Weight to the Podiatrist's Opinion

On November 15, 2012, Dr. Michael Lacivita, a podiatrist, completed a "check the box" form opining that Plaintiff had no limitations in lifting, carrying, standing, walking, sitting, pushing, and pulling. (T.241). No supporting documentation was attached, and no explanations were given for this opinion. The ALJ gave "controlling weight" to Dr. Lacivita's opinion. (T.30). This was error as a matter of law, and moreover, substantial evidence does not support this finding.

Although Dr. Lacivita treated Plaintiff for a period of time, he is a podiatrist and, as such, is not considered an "acceptable medical source" who can provide medical opinions. See, e.g., Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide medical opinions.") (footnote omitted). Only "acceptable medical sources" are "treating sources" whose opinions may be entitled to controlling weight. See 20 C.F.R. §§ 404.1513(a), (d); id., § 404.1527(a)(2); Social Security Ruling ("SSR") 06-03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO

ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939 (S.S.A. Aug. 9, 2006); see also Diaz, 59 F.3d at 313-14 (holding that district court erred in holding that the chiropractor's opinion had "binding effect . . . in the absence of substantial evidence to the contrary"; "[u]nder the current regulations, the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read to *require* the ALJ to give controlling weight to a chiropractor's opinion") (emphasis in original; footnote omitted).

Thus, in Diaz, 59 F.3d at 313, the Second Circuit made it clear that *only* the types of health care professionals identified as "acceptable medical sources" in the Commissioner's Regulations are qualified to provide medical opinions. Podiatrists are *not* listed as acceptable medical sources. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (treating sources are limited to licensed physicians, licensed osteopaths, licensed or certified psychologists, and licensed optometrists). Consequently, the opinion from podiatrist Dr. Lacivita "is properly treated merely as a non-medical opinion that may aid in understanding how [P]laintiff's impairments affect her ability to work." Sobolewski v. Apfel, 985 F. Supp. 300, 312 (E.D.N.Y. 1997) (citing Diaz, 59 F.3d at 313 (holding chiropractor's opinion to be non-medical source of information that

may aid in understanding claimant's impairments); Hernandez v. Comm'r of Soc. Sec., 96-CV-1585, 1997 WL 566119, at *4 (S.D.N.Y. Sept. 10, 1997) (podiatrist, like chiropractor, is non-treating source)); see also 20 C.F.R. §§ 404.1513(e), 416.913(e) (discussing non-medical opinions from health care professionals).

Here, Dr. Lacivita did not treat Plaintiff for any impairments aside from her foot pain caused by flexible pes cavus (hollow foot) bilaterally; hallux limitus, on the right side; and arthritis, bilaterally. (See T.230-31 (8/12/11); T.232-33 (8/26/11; 9/27/11); T.234 (10/25/11)). Although the ALJ has the discretion to determine the appropriate weight to accord a podiatrist's opinion based on all the evidence in the record, see Diaz, 59 F.3d at 313–14, there is no indication in the ALJ's opinion that he considered Dr. Lacivita as anything other than an acceptable medical source who could render a medical opinion or, indeed, a treating physician whose opinion could be afforded controlling weight. "Because the ALJ applied an incorrect legal standard to the evidence before him, his decision denying benefits may be reversed on this ground alone." Sobolewski, 985 F. Supp. at 312 (holding that ALJ committed legal error when he "treated the RFC assessment of Dr. Coombs, the podiatrist, as a treating source's medical opinion on a par with the opinions of [claimant]'s physicians, Drs. Parikh and Broomfield"). Furthermore, Dr. Lacivita's opinion was provided over a year after he last treated Plaintiff, and was inconsistent with

-7-

his most recent treatment notes, from October 25, 2011, indicating that Plaintiff was having throbbing pain in her right toes; limited range of motion in the first metatarsophalangeal joint of the right foot upon loading; and pain with end-stage dorsiflexion. (T.234). Moreover, the form was one on which Dr. Lacivita merely "checked off" various boxes, and did not provide any narrative explanation or supporting documentation for his opinion. "The lack of supporting detail and/or objective findings provides a further reason for affording the opinion less weight. " Wright v. Colvin, No. 5:12-CV-0440 MAD/VEB, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); Halloran v. Barnhart, 362 F.3d 28, 31 n. 2 (2d Cir. 2004) (describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); Llorens-Feliciano v. Astrue, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

### 2. The RFC Is Not supported by Substantial Evidence.

Without the opinion of podiatrist Dr. Lacivita, the only other medical opinions in the record are from treating physicians Dr. Michael Calabrese and Dr. Graham Huckell.

Dr. Huckell's opinion, issued September 21, 2012, only pertained to Plaintiff's right knee. (T.274). Dr. Huckell simply noted that Plaintiff was "disabled" with regard to that knee. As the Commissioner argues the ALJ did not err in declining to adopt the statements by Dr. Huckell on the ultimate issue of Plaintiff's disability. See, e.g., SSR 96-5p, 1996 WL 362206, 61 FR at 34472; see also id. at 34473 ("[T]he [ALJ] is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner."); id. at 34474 ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work,' or make similar statements of opinions. . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. . . . [E]ven when offered by a treating source, they can never be entitled to controlling weight or given special significance.").

However, Dr. Calabrese, who began treating Plaintiff on October 19, 2009 (T.286, 288-91), was a treating source able to give a detailed, longitudinal picture of Plaintiff's impairments.

See, e.g., Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) ("Pursuant to the regulations governing the Social Security scheme, an opinion from a treating physician is given more weight 'since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment'. 20 C.F.R. § 416.927(d)(2). If the treating physician's opinion is well-supported by other medical evidence, then it is given controlling weight. Id."). Dr. Calabrese also provided his opinion on Plaintiff's specific functional limitations rather than simply statements on the ultimate issue of disability. Beginning in June of 2010, immediately after Plaintiff's automobile accident, Dr. Calabrese indicated that she was totally disabled. (T.206, 213). However, beginning in September of 2010, and extending through January fo 2011, Dr. Calabrese's treatment notes reflect some improvement in Plaintiff's condition. Her subjective complaints consisted of more mild symptoms, and objective examination findings showed less severe abnormalities. (Compare T.206-13 with T.186-99). Dr. Calabrese consistently opined that Plaintiff could return to work as long as she avoided any "heavy lifting." (T.186, 194, 199). For instance, Dr. Calabrese returned Plaintiff to work on September 24, 2010, and her pain level was at a 3 to 4 out of 10. (T.200-02). On January 25, 2011, Dr. Calabrese stated that Plaintiff could return to work without "heavy lifting," and was, in his opinion, "mildly temporarily partially disabled."

(T.188-89). Plaintiff concedes that Dr. Calabrese's statements from September 2010, through January 2011, were arguably consistent with a light RFC.

However, as Plaintiff points out, in January 2012, Dr. Calabrese issued a much more restrictive medical source statement, opining that Plaintiff could only lift up to 10 pounds; must alternative standing, walking, and sitting hourly; must avoid repetitive bending, carrying, twisting, overhead reaching, squatting, pushing, pulling, kneeling, climbing, pulling, and stooping. (T.258). These restrictions are not consistent with light work, as Plaintiff argues. See Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983) ("The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. . . .").

Subsequent treatment notes from Dr. Calabrese, Dr. Huckell, and Physical Therapist Mandell support Dr. Calabrese's RFC

assessment. On March 21, 2012, Plaintiff returned to Dr. Calabrese noting that she had to quit a nutrition class because her neck and back pain prevented her from completing the physical requirements. (T.255). Although physical therapy was proving helpful, her cervical and lumbar ranges of motion remained reduced by 20 to 50 percent. (T.255). In July 23, 2012, Dr. Calabrese noted that Plaintiff's cervical and lumbar ranges of motion were roughly 50 percent of full. (T.252). On September 11, 2012, Plaintiff saw Dr. Huckell and reported a history of right knee pain for the past week that necessitated a trip to immediate care. (T.271). She had improvement of 80 percent but had residual swelling, stiffness, limited range of motion, and pain around the knee joint, worsened by weight bearing and ameliorated with rest and anti-inflammatory medications. (T.271). An x-ray revealed early degenerative joint disease and a possible meniscal tear. (T.273). On October 15, 2012, Plaintiff saw Dr. Calabrese for continued swelling in her knees; cervical and lumbar ranges of motion were decreased by 50 percent and grip strength was decreased to 4/5 bilaterally; and she walked with an antalgic gait. (T.251). On April 10, 2013, Dr. Calabrese noted that Plaintiff had multiple herniated discs and required continued physical therapy. (T.279). After the hearing, updated cervical and lumbar MRIs were taken on June 28, 2013 (T.280-83),[4]

---

[4] "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." Perez v. Chater, 77 F.3d

and revealed no interval change in the lumbar area, but a slight worsening in the cervical area, evidenced by neuroforaminal stenosis at C5-6. The stenosis was mild to moderate, worse on the right, and possibly compressing the exiting C5 nerve root bilaterally. (T.283). On June 27, 2013, Plaintiff was taking Hydrocodone, Flexeril, ibuprofen, and Zegerid (T.284) for her pain, although she previously had tried to avoid any narcotic medications due to concerns about becoming overly reliant on them. Thus, as the foregoing records show, Plaintiff's symptomatology and objective findings worsened over time, and provide support for Dr. Calabrese's more restrictive RFC opinion in January 2012, which is inconsistent with the ALJ's RFC assessment of light work.

Although the ALJ stated that Plaintiff's subjective complaints supported the RFC assessment of light work, this statement impermissibly cherry-picks from the record. See, e.g., Beck v. Colvin, No. 6:13-CV-6014(MAT), 2014 WL 1837611, at *13 (W.D.N.Y. May 8, 2014) ("The ALJ ignored the portions of [the doctor's] reports in which he strongly opines that if [claimant] were placed in a full-time competitive work-environment, her depression and anxiety symptoms would worsen and she likely would decompensate. The ALJ improperly cherry-picked from [that doctor's] opinions only

---

41, 45 (2d Cir. 1996). When the Appeals Council denies review after considering new evidence, the court is to "simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." Id. at 46.

the information that purportedly favors a finding of no disability."). At the hearing, Plaintiff testified that she could sit for 10 minutes and stand for 10 minutes, was really limited in walking, needed to elevate her legs, used a cane to walk, had to lie down every afternoon for a couple of hours, and could lift, at most, a loaf of bread. (T.75-78). This is consistent with her statements on February 6, 2013, when she returned to Physical Therapist Mandell reporting that she had been bedridden for the past week due to "constant" back pain ranging from a 7 to 10 out of 10. (T.276). She could not sit for more than 15 minutes, stand for more than 10 minutes, or walk for more than 10 minutes at a time. Lumbar lordosis was abnormal, and ranges of motion in the lumbar, cervical, and thoracic areas were diminished. Strength was reduced to 3/5 throughout, and her balance was abnormal.

The ALJ also purported to rely on "clinical findings" and "diagnostic imaging" to support his RFC assessment. As a lay person, "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); citations omitted), rep. and rec. adopted, No. 08-CV-828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). "Where

the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself.'" Id. (quoting Deskin, 605 F. Supp.2d at 912; brackets and ellipsis in original). Here, the only competent medical expert opinions are from Dr. Huckell and Dr. Calabrese, who are acceptable medical sources and who qualify as Plaintiff's treating physicians. Dr. Huckell's treatment notes and opinion, while it does opine on the ultimate issue of disability and thus cannot be given controlling weight, nevertheless is not consistent with the total lack of physical limitations indicated by non-acceptable source Dr. Lacivita. Dr. Calabrese's opinions prior to January 11, 2012, are arguably consistent with the RFC assessment of light work, but certainly are not consistent with, and do not provide substantial evidence to support, the ALJ's finding that Plaintiff, throughout the relevant period, could perform light work. The Court finds that from January 11, 2012, onward, the ALJ's RFC finding for light work is unsupported by any competent medical expert opinion. Accordingly, the Court finds that it is unsupported by substantial evidence. See, e.g., Walker, 2010 WL 2629832, at *6 (citing Isaacs v. Astrue, No. 1:08-CV-00828, 2009 WL 3672060, at *11 (S.D. Ohio Nov. 4, 2009) ("The ALJ rendered her RFC finding for medium work without reference to any medically determined RFC

-15-

opinion bridging the raw medical data to specific functional limitations. Because there is no medical source opinion supporting the ALJ's finding that the plaintiff can perform 'medium' work, the Court concludes the ALJ's RFC determination is without substantial support in the record")).

For the foregoing reasons, the Court finds that from January 11, 2012, onward, the RFC assessment formulated by the ALJ is legally erroneous and not supported by substantial evidence. As Plaintiff notes, a period of disability is not limited to the date of onset but may consist of any continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1)(A). More than 12 months elapsed between January 11, 2012, and the ALJ's decision on May 13, 2013. The Court agrees that this matter should be remanded for further consideration of Plaintiff's condition as of January 11, 2012.

### B. Plaintiff's Point II: Error by Appeals Council

Because the Court has found multiple alternative grounds on which to remand this matter, the Court need not determine if the Appeals Council erred in its treatment of the records and opinions submitted by Plaintiff after the hearing. This evidence is now part of the record and, on remand, the ALJ will evaluate these records and opinions in accordance with the pertinent Regulations and policy ruliings. E.g., Chiles v. Colvin, No. 1:14-CV-00943-MAT, 2017 WL 2703654, at *4 (W.D.N.Y. June 23, 2017).

**VI. Conclusion**

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is denied, and Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, the Commissioner is directed to consider whether Plaintiff has been under a disability as defined by the Act as of January 11, 2012. The Commissioner should take the opportunity to obtain physical RFC assessments regarding the relevant period from one or more of Plaintiff's treating physicians, such as Dr. Calabrese or Dr. Huckell.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   September 13, 2017
         Rochester, New York.